HARBAUGH (VEATCH v.). See Case No. 16,905.

HARBAUGH (WILSON v.). See Case No. 17,807.

---

## Case No. 6,045a.

### HARBECK et al. v. The FRANCIS A. PALMER.

[22 Betts, D. C. MS. 193.]

District Court, S. D. New York. July Term, 1856.

MARITIME LIEN—MATERIALS FURNISHED—VENDOR.

[One who contracts to build a vessel with his own materials, the same to be paid for in installments at various periods of the building, is in the position of a vendor, and has no lien which can be enforced in admiralty, either under the maritime law or under the New York statute (Act March 29, 1855) giving a lien for work or materials "furnished" for the building of a vessel.

[See note at end of case.]

[This was a libel in rem by John H. Harbeck and others against the ship Francis A. Palmer to enforce an alleged lien. Russel H. Post and others appeared as claimants.]

BETTS, District Judge. There is no important disagreement between the parties in relation to the facts connected with this case. The exception taken by the claimants to the jurisdiction of the court presents the only question now necessary to be considered. Indeed it may be fairly intended that no substantial defence exists to the essential merits of the case, nor but that the libellants are entitled, under the assignment to them by Perim, to a large balance yet payable by the claimants. They oppose this form of remedy by the defence that the libellants have no right of action in rem in the admiralty for the recovery of the money due them. It is admitted by both parties that the libellants have the same but no other or higher privilege in respect to this demand

than would have been possessed by their assignor, Perim, had he continued to hold the rights acquired under his agreement with the complainants, in his own name and unassigned.

The ship is an American vessel. The first position for consideration then is, whether the state statute making provision for the collection of demands against ships or vessels (2 Rev. St. 405, § 1), or the act in amendment thereof passed March 29, 1855 (78th Sess. Laws, 174), secures Perim a lien on this ship, for the price of building her, under his contract. The provision of the two acts united, present this enactment as the existing law on the subject. "Whenever a debt amounting to $50 or upwards shall be contracted by the master, owner or his agent, builder or consignee of any ship or vessel within this state on account of any work done or materials or articles furnished in this state, for or towards the building, repairing, fitting, furnishing or equipping such ship or vessel, such debt shall be a lien upon such ship or vessel, her tackle, apparel and furniture, &c." It appears to me that the contract between Perim and the claimants does not constitute a relationship which brings them within the purview of the state statute. That plainly contemplates that the person setting up a lien against a vessel shall have furnished materials or rendered services for her to the benefit of her owner, she being the property at the time of some other person than the mechanic or merchant man. The act takes effect only "whenever a debt shall be contracted." Accordingly the status of creditor and debtor is indispensable to the vitality of the statutory privilege. It does not arise out of the fact solely that the property or labor of one person is in and part of a vessel owned by another, but rests upon the consideration that the betterment of the ship was obtained by means of a direct or implied credit given her owner on her responsibility.

The pleadings in this cause and the contract and specifications thereto attached, with the admissions of counsel on both sides, present the parties in the following relation: Perim was a ship builder, and on the 1st of February, 1854, contracted with the claimants to build the ship in question and furnish the materials, &c. She was built in his yard in this port, was launched on the 21st day of August, 1854, and delivered the same day along side a dock on the East river into the actual possession of the claimants, although not then in an entirely finished state. The contract was that the ship should be delivered along side the dock afloat on or about the first day of August, 1854, finished complete (with certain specified exceptions); and it was further stipulated that Perim had sold, transferred, assigned and delivered over to the claimants, the keel of said ship, and all her timbers, beams, planks, bolts and every other part, parcel and material of said ship so soon as the same shall be put up and constructed as a part of said ship. In consideration whereof the claimant agreed to pay Perim $60,000. The contract was accompanied with a detail of specification and directions respecting dimensions, materials, workmanship, &c., and the modes of payment, which was to be made in eleven successive instalments, the first one of $5000, when the keel was laid, and so on as the building progressed, in seven subsequent instalments of $5000 each, two of $1000 each and the last one of $8000 when finished and delivered as per contract. Perim failed in business about the first of August. The ship was launched on the 21st. Perim was bound to keep the ship insured against fire whilst she was building, and to assign the policies to the claimants.

Giving the contract set up its natural operation, it may well be taken to be one of purchase and sale prospective and executory in part, but executed and complete as each part was constructed. The claimants were to acquire a ship not then in existence. Perim was to create and construct it progressively by his own labor and with materials supplied by him and a transfer by contract in full property may result from the terms of the agreement. So soon as a specified portion of the vessel was constructed by Perim, that part might by force of the stipulation become the property of the claimants and so on from step to step as its building advanced, until the ship was launched and delivered complete. In that sense of the contract the claimants did not become owners of any part until the work was done and the materials furnished for or towards the building of such part, because it was that work and those particular materials, after they had been supplied by the builder, which constituted the subject of their purchase and property. It is not alleged or proved that Perim furnished labor or materials to any part of the ship under that acceptation after it had become the property of the claimants. The transaction between the parties in that view of it was not, in my judgment, one contemplated and described in the statute as entitled to the privilege of lien. Perim was vendor of his own labor and materials, not in the way of reparation or betterment of a ship in the ownership of the claimants, but for the purpose of constructing and bringing into existence a ship of which the claimants were thereby to become owners. Taking the language of the contract to be so definite as to amount to a positive sale, and to render the ship in its various parts when each was constructed the property of the claimants, I am of opinion the lien claimed cannot be maintained, because the credit intended to be secured by the statute was not given, and could not in the nature of things come into existence.

The act protects a debt contracted by the owner, master or agent of a ship, for work or materials furnished for or towards the building such ship, and does not cover a bargain to buy a ship to be built thereafter by a ship builder with his own materials. The courts in this state, if not controlled by the unequivocal stipulations of the parties, would hold this contract a prospective and executory one, and that the claimants did not become owners of the ship until she was completed and delivered according to the conditions of the contract. Andrews v. Durant, 1 Kern. [11 N. Y.] 35. Furthermore, as a general principle, admiralty courts enforce municipal liens in respect to domestic vessels to the same extent only that the maritime law gives the lien on foreign vessels. Smith v. The Eastern Railroad [Case No. 13,039]. I find no authority out of the text of the civil law which accords a lien upon a foreign vessel which can be enforced in admiralty in favor of her builders. This point however, is not intended to be passed upon in the present case.

Independent of the considerations already suggested, I am of opinion that the contract rested upon a personal credit given by Perim to the claimants, and displaces all implication of a lien on the ship for her price. Raymond v. Tyson, 17 How. [58 U. S.] 53. The periods and manner of payments and the terms of the agreement and the situation of the parties denote a bargain of sale in this instance on no conditions differing from that of a sale of a ship already in service. If the ownership of the ship did not rest in the claimants pari passu as her construction proceeded from one stage of instalments to another, then she became their property only by virtue of a general purchase of her when finished, and the law does not impute to a vendor any lien for the purchase money of a ship after her free delivery to the purchaser. In either construction of the contract it appears to me the claim of the libellants rests upon that of a vendor of the ship, and not on that of a mechanic or material man furnishing necessaries to a ship already in being. In my opinion the libel cannot be supported.

[NOTE. In Case No. 203 there was a libel filed in the circuit court against the same vessel to recover for plumbing and coppersmithing. The libel was dismissed for want of jurisdiction.]

HARBECK (MINER v.). See Case No. 9,-629.

HARBECK. The ELVIRA. See Case No. 4,-424.

HARBERT (NATIONAL HAY RAKE CO. v.). See Case No. 10,044.

HARBIN (HARDY v.). See Cases Nos. 6,-059 and 6,060.

HARBISON (UNITED STATES v.). See Case No. 15,300.